**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SHARON LYNN STANCLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  4:15-CV-00405-CAN |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits [Dkts. 1; 10].  After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **REMANDED**.

## BACKGROUND

### I.    *Procedural History of the Case*

On March 17, 2010, Sharon Lynn Stancle ("Plaintiff") filed her application for social security disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), alleging an onset of disability date of July 1, 2009 [TR at 180-81, 218].  Plaintiff's application was initially denied by notice on October 7, 2010, and again upon reconsideration on August 17, 2011, after which Plaintiff requested a hearing before an administrative law judge ("ALJ").  *Id.* at 62-65, 87-91, 103-106.  The ALJ conducted a hearing on May 21, 2012

("Hearing I"), and heard testimony from Plaintiff and Vocational Expert Ann Young ("Ms. Young"). *Id.* at 26-27. Plaintiff was represented by counsel at Hearing I. *Id.* On July 13, 2012, the ALJ issued his decision denying benefits ("Determination I"), and found Plaintiff not disabled at step four of the prescribed sequential evaluation process. *Id.* at 66-78. On August 6, 2012, Plaintiff requested that the Appeals Council review Determination I, and on August 14, 2013, the Appeals Council remanded for further evaluation of Plaintiff's treating physician Dr. Lieman's opinion and the date last insured. *Id.* at 82-85, 147. The Appeals Council found Determination I did not contain an evaluation of Dr. Lieman's opinion or the weight given to his opinion. *Id.* at 84. On December 9, 2013, the ALJ conducted a second hearing ("Hearing II") and heard testimony from Plaintiff and Vocational Expert Bonnie Ward ("Ms. Ward"). *Id.* at 49-50. Plaintiff was also represented by counsel at Hearing II. *Id.* On February 28, 2014, the ALJ issued his decision again denying benefits ("Determination II"), and found Plaintiff not disabled at step four of the prescribed sequential evaluation process (discussed *infra*). *Id.* at 9-24. On April 9, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision, and on May 23, 2015 the Appeals Council denied Plaintiff's request for review, making Determination II the final decision of the Commissioner. *Id.* at 1-8.

On June 15, 2015, Plaintiff filed her Complaint with this Court [Dkt. 1]. On September 4, 2015, the Administrative Record was received from the Social Security Administration ("SSA") [Dkt. 8]. Plaintiff filed her Brief on October 1, 2015 [Dkt. 10]. On December 7, 2015, the Commissioner filed her Brief in Support of the Commissioner's Decision [Dkt. 12], and on December 11, 2015, Plaintiff filed her Reply Brief [Dkt. 13]. On February 3, 2016, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 16].

## II. Statement of Relevant Facts

### 1. Age, Education, and Work Experience

Plaintiff was born on April 28, 1960, making her fifty three years of age at the time of the Commissioner's final decision [TR at 180-81]. Plaintiff completed the twelfth grade, has a high school diploma, and has some advanced college training. *Id.* at 219-20. Plaintiff's past relevant work experience includes a daycare worker. *Id.* at 38-46.[1] Plaintiff asserts that her onset date of disability is July 1, 2009. *Id.* at 180.

### 2. Medical Record Evidence

Plaintiff's impairments include history of back and neck pain, history of bilateral knee pain, history of bilateral carpal tunnel syndrome, history of right arm weakness, history of abdominal surgeries, hyperlipidermia, overweight (5'4'' and 170 pounds), and history of frequent urination.[2] At issue herein, predominantly, is Plaintiff's urinary incontinence. Plaintiff's relevant medical records related to her urinary incontinence and residual functional capacity ("RFC") consist of reports from: (a) Dr. Berry Albright Fleming, M.D. ("Dr. Fleming") and Dr. Richard C. Kaye, M.D. ("Dr. Kaye") at Texas Health Presbyterian Hospital ("Texas Health") [TR at 505-70]; (b) Dr. Stephen J. Lieman, M.D. ("Dr. Lieman") at Baylor Medical Center ("Baylor") [TR at 571-89, 604-14, 625]; (c) Dr. David M. Bailey, M.D. ("Dr. Bailey") [TR 497-504]; and (d) Dr. James Baker, M.D. ("Dr. Baker") [TR at 598-603].

---

[1] Plaintiff has previously held several other jobs as well, including as a Certified Nursing Assistant ("CNA"), an admin clerk, and an activities assistant [TR at 38-46, 226].

[2] Plaintiff and Commissioner dispute the ALJ's findings at steps four and five with respect to Plaintiff's history of urination [*see* Dkts. 10; 12; 13]. Neither party disputes the ALJ's findings regarding Plaintiff's history of back and neck pain, history of bilateral knee pain, history of bilateral carpal tunnel syndrome, history of right arm weakness, history of abdominal surgeries, hyperlipidemia, and overweight, and the Court therefore does not address (or disturb) them. *Id.* Plaintiff is referred to as having both a "history of frequent urination," and "urinary incontinence," which generally have slightly different medical meanings [TR at 14-16, 505-13]. It is clear that these terms are intended to refer to the same subset of Plaintiff's symptoms. *Id.* at 14-18. The Court herein will use the term "urinary incontinence" when referring to Plaintiff's condition for the avoidance of confusion. *Id.*

###### a. *Dr. Fleming & Dr. Kaye*

On December 6, 2011, Plaintiff was seen by Dr. Fleming in the emergency room at Texas Health Plano for vaginal bleeding and syncope (temporary loss of consciousness caused by a fall in blood pressure) and light-headedness [TR at 506-13]. Plaintiff had been treated previously by Dr. Fleming for heavy menstrual bleeding and uterine fibroids. *Id*. at 514-15. Plaintiff was admitted the same day and received a blood transfusion; and, when her condition did not improve, Plaintiff underwent a partial hysterectomy on December 8, 2011. *Id.* at 506-22. On December 23, 2011, Plaintiff was seen in the emergency room for urinary leakage from the vaginal area, and was diagnosed with a vesico-vaginal fistula (an abnormal opening between the vagina and the bladder). *Id.* at 531-32. Dr. Kaye, at the direction of a "Dr. Lightfoot, urology," recommended delay in surgery pending Plaintiff's complete recovery from her partial hysterectomy, and Plaintiff was fitted with a Foley catheter. *Id.* at 532-50.[3]

###### b. *Dr. Lieman*

On January 9, 2012, Plaintiff was seen by Dr. Lieman at Baylor regarding her vesico-vaginal fistula and reported continued vaginal leakage [TR at 571-89]. On January 23, 2012, Plaintiff underwent an exploratory laparotomy, lysis of adhesions (cutting of scar tissue), a left ureteral reimplantation (fixing connection between kidneys and bladder), and a cysioscopy and bilateral retrograde pyelograms (diagnostic tests to examine the bladder and kidneys). *Id.* Plaintiff's post-surgery diagnosis was an uretero-vaginal fistula (an abnormal opening between the vagina and the ducts that carry urine from the kidneys to the bladder). *Id.* at 583. The record contains no records from Dr. Lieman between January 23, 2012 and June 4, 2012. *Id.* at 314-625.

---

[3] The record indicates that there may have been robotic malfunction or surgical problem which caused the vesico-vaginal/utero-vaginal fistula as a complication from the partial hysterectomy surgery, although the record is unclear precisely what occurred. *Id.* at 28-29, 54-56.

Via letter dated June 4, 2012, Dr. Lieman wrote that:

> [Plaintiff] is post ureteral reimplantation for an uretero-vaginal fistula on January 23, 2012. Due to her surgery she may have chronic bladder spasms with frequent urination.

*Id.* at 589. On November 8, 2012, Dr. Lieman saw Plaintiff for a follow up appointment, at which time he assessed female stress incontinence (unintentional loss of urine due to physical movement/activity) and difficulties with urinary retention and reported "has some SUI ["stress urinary incontinence"] and not sure emptying." *Id.* at 605-607.[4] Dr. Lieman's assessments were similar at Plaintiff's November 26, 2012 follow up appointment. *Id.* at 608-10. On September 4, 2013, Plaintiff had a third follow up visit with Dr. Lieman, at which time he assessed female stress incontinence, urinary retention (resolved), and incontinence without sensory awareness. *Id.* at 611-13. Dr. Lieman reported Plaintiff "[h]as occ. SUI and insensible urine loss" and recommended TVT (tension-free vaginal tape surgery), kegels, and rehab prn (rehabilitation as needed). *Id.* On January 28, 2014, Dr. Lieman wrote:

> [Plaintiff] is a patient I see for bladder issues. She has bladder spasms and frequent urination associated with severe incontinence. Due to her bladder instability and frequency of urination she should be excused from jury duty.

*Id.* at 625.

### c. *Dr. Bailey*

On August 8, 2011, Dr. Bailey, a medical consultant, conducted a RFC assessment based on Plaintiff's medical records [TR at 497-504]. Dr. Bailey opined that Plaintiff could lift 20 pounds occasionally, ten pounds frequently, sit for about six hours in an eight hour workday, stand for six hours in an eight hour workday, and was unlimited in her capacity to push and/or

---

[4] Records that post-date the date last insured may be considered by the Commissioner (and this Court) provided that they relate to the period between the alleged onset of disability date and the date last insured. *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) (stating that medical records reflecting retrospective diagnosis of an impairment, but dated after the date last insured may be considered as evidence of disability existing prior to the date last insured). Plaintiff's date last insured was June 30, 2012 [TR at 83-86]. Accordingly, the Court may consider Dr. Lieman's records dated prior to June 30, 2012, and also any records dated after that so long as they relate or refer to the applicable period. *Likes*, 112 F.3d at 191.

pull (including operation of hand and/or foot controls).  *Id.*  Dr. Bailey assessed Plaintiff with no postural, manipulative, visual, communicative, or environmental limitations.  *Id.*  Dr. Bailey expressly stated that there were no medical source statements in the file at the time of Dr. Bailey's assessment.  *Id.*[5]  In light of the date of Dr. Bailey's assessment, Dr. Bailey did not have the opportunity to review Dr. Fleming's, Dr. Kaye's and/or Dr. Lieman's medical records when making his findings.  *Id.* at 497-504, 571-89, 605-13. 625.

### d.  Dr. Baker

On March 26, 2013, Dr. Baker saw Plaintiff for a medication check and laboratory appointment [TR at 598-603].  Dr. Baker stated that Plaintiff reported "she feels that she is doing well."  *Id.*  Dr. Baker reported that Plaintiff and he discussed micro urinary outlet obstruction and some of Plaintiff's mental health symptoms.  *Id.*  On March 31, 2013, Plaintiff was seen for a follow up visit regarding labs and for a rash on her back.  *Id.*  Dr. Baker reported kidney/back pain but negative for dysuria, fever, and pyuria.  *Id.*  Dr. Baker made no comment or notes regarding Plaintiff's frequency of urination, or activities of daily living or job activities restrictions or limitations.  *See id.* at 314-625.

---

[5] Medical source statements are defined in SSR 96-5P as:

> medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports. Medical source statements are to be based on the medical sources' records and examination of the individual; i.e., their personal knowledge of the individual. Therefore, because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individual's abilities.
>
> Medical source statements submitted by treating sources provide medical opinions which are entitled to special significance and may be entitled to controlling weight on issues concerning the nature and severity of an individual's impairment(s). Adjudicators must remember, however, that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one.

*Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r,* SSR 96-5P (S.S.A. July 2, 1996) (hereinafter "SSR 96-5P") (footnote omitted).

### 3.     Hearing Testimony

#### a.     Plaintiff's Testimony

At Hearing I before the ALJ on May 21, 2012, Plaintiff testified that she is married and lives with her husband in Tulsa, Oklahoma [TR at 29-42]. Plaintiff reported leg swelling and muscle spasms in her spine, neck, and back stemming from an incident where she broke the fall of a patient at St. John's Medical Center. *Id.* at 31-35. Plaintiff also testified that her back locks up requiring muscle relaxants and pain medications at least once every three to six months. *Id.* Plaintiff further testified that she has a left knee problem which causes difficulties with walking and pain in both shoulders, purportedly related to calcium buildup. *Id.* at 35-42. Plaintiff self-reported that she cannot stand for longer than thirty minutes, nor sit for longer than fifteen to thirty minutes, without her back locking up or pain occurring. *Id.* Additionally, Plaintiff testified that she has previously worked as a daycare worker director/supervisor and a certified nursing assistant ("CNA"). *Id.* Plaintiff's particular daycare worker position required her to lift up to forty to fifty pounds. *Id.*

At Hearing II before the ALJ on December 9, 2013, Plaintiff testified that she still lives in Tulsa, Oklahoma with her husband and has not returned to work. *Id.* at 50-56. Plaintiff reiterated that she continues to experience leg swelling and pain, and difficulties with range of motion. *Id.* Plaintiff testified that she has stress incontinence which causes problems with leakage when lifting objects such as laundry baskets and gallons of milk. *Id.* Further, Plaintiff reported that the stress incontinence began after her December 8, 2011 fibroid surgery where "[they] ended up using the robotic machine that ripped me all up on the inside." *Id.* Plaintiff testified that her incontinence has worsened over time, and that Dr. Lieman is her treating physician for the condition. *Id.*

### b.    *Vocational Expert Testimony*

Ms. Young testified as a vocational expert at Hearing I.  *Id.* at 41-46.  The ALJ asked Ms. Young to describe Plaintiff's work history, which she classified into one position (with substantial gainful activity): daycare worker (light, but as performed medium; semi-skilled; Special Vocational Preparation ("SVP") of 4).  *Id.*[6]  Neither Party disputes Plaintiff's past work history [Dkts. 10; 12; 13].  The ALJ asked Ms. Young a hypothetical question [TR at 41-46].  The ALJ did not include in the hypothetical posed to Ms. Young any limitations related to the finding that Plaintiff had urinary incontinence or her inability to perform above the shoulder work.  *Id.*

Upon remand, Ms. Ward testified as a vocational expert at Hearing II.  *Id.* at 56-61.  Ms. Ward confirmed that she understood Plaintiff's past work to be a daycare worker (light, but as performed medium; semi-skilled, DOT 359.677-018) and further indicated that Plaintiff had no transferable skills from that job to sedentary level exertion work.  *Id.*   The ALJ asked Ms. Ward a hypothetical question incorporating Plaintiff's age, work history, and education, and asked Ms. Ward to assume the hypothetical individual was limited: (1) to light work, as described by the Commissioner, can occasionally lift and carry 20 pounds, frequently carry 10 pounds, stand or walk at least six hours in an eight hour workday and secondly [sic] six hours in an eight hour workday with normal breaks; (2) must avoid work above shoulder level; (3) cannot make constant use of the hands for repetitive tasks such as keyboarding; (4) can use hands frequently but not constantly; and (5) must have access to a restroom at the job site.  *Id.*

---

[6] SVP is defined in the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, page 1009 (4th ed. 1991).  Using the skill level definitions in 20 C.F.R. § 404.1568 and § 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

The ALJ asked Ms. Ward if the hypothetical individual could perform Plaintiff's past relevant work, and Ms. Ward answered negatively that Plaintiff could not perform her past work because "I think the no work above the shoulder level, the day care worker would be required to do that." *Id.* Notwithstanding, Ms. Ward testified that there are other jobs that exist in the national economy that such a hypothetical individual could perform including: (1) furniture rental clerk (light, unskilled, SVP of 2); and (2) arcade attendant (light, unskilled, SVP of 2). *Id.*[7] Plaintiff's attorney subsequently examined Ms. Ward at this point, asking a further hypothetical question which added the limitation that such person be permitted to "ha[ve] multiple breaks at unscheduled times throughout the course of the day because of chronic bladder spasms." *Id.* Ms. Ward stated that if an individual was "having to consistently take additional breaks in addition to the breaks that are normally given, they're normally not able to maintain employment." *Id.*

### III.    *Findings of the ALJ*

#### 1.    *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404,

---

[7] Ms. Ward began to say that such a hypothetical individual could also perform the job of parking lot attendant, but asked the ALJ to strike that job. *Id.*

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

Upon Appeals Counsel remand and after hearing testimony at Hearing II and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation (previously defined as "Determination II"). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2009, the application date, and any work done after that date was not performed at a substantial gainful activity level [TR at 14-15]. The ALJ also found that Plaintiff met the earnings requirement of the Act through June 30, 2012. *Id.* At step two, the ALJ determined that Plaintiff had the severe impairments of history of back and neck pain, history of bilateral knee pain, history of bilateral carpal tunnel syndrome, history of right arm weakness, history of abdominal surgeries, hyperlipidemia, overweight, and history of frequent urination, and such impairments were medically determinable. *Id.* At step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 15-16. No Party contests or otherwise disputes the ALJ's findings at steps one, two, or three [Dkts. 10; 12; 13].

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work[8] with the following limitations: (1) Plaintiff must avoid above shoulder level work; (2) Plaintiff cannot make constant use of her hands for such repetitive tasks as keyboarding; and (3) there must be access to a restroom at Plaintiff's job site [TR at 15-18]. At all times from July 1, 2009 to Plaintiff's last date insured (June 30, 2012), the ALJ found that Plaintiff retained the residual functional capacity to lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand/walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, all with normal breaks. *Id*. Continuing the step four analysis, the ALJ then determined that Plaintiff was able to perform her past relevant work as a day care worker as it is generally performed in the national economy. *Id*. The ALJ, in the alternative, made findings at step five that Plaintiff's residual functional capacity allowed her to perform a range of light work in the national economy, including as a furniture rental clerk and an arcade attendant. *Id*. Based on this determination, the ALJ concluded Plaintiff was not disabled from July 1, 2009 to June 30, 2012. *Id*.

---

[8] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy. 20 C.F.R. § 404.1567. Sedentary, Light, and Medium work are defined as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
> (c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. *Id*.

20 C.F.R. § 404.1567.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Upon review of Plaintiff's and Commissioner's briefs, the Court discerns three primary issues on appeal: (1) whether the ALJ properly considered Plaintiff's RFC as determined by the ALJ [Dkt. 10 at 6]; (2) whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence (including whether the ALJ gave proper consideration to Plaintiff's treating physician records) [Dkt. 10 at 6]; and (3) to the extent any errors exist, whether such errors by the ALJ were harmless [Dkt. 10 at 6-11]. The Court considers each issue in turn herein.

## I.       ALJ's Failure to Apply Plaintiff's RFC at Step Four

The Court first considers Plaintiff's argument that the ALJ improperly applied his own RFC finding at step four [Dkt. 10 at 6].  While Plaintiff's brief is not a model of clarity, it seems that Plaintiff objects to the ALJ's findings that Plaintiff could perform her past work; notwithstanding, Ms. Ward's unequivocal testimony that she would be unable to return to such work [Dkt. 10 at 4-5].

It is well established that a vocational expert's testimony constitutes substantial evidence supporting an ALJ's decision regarding ability to perform past work when a vocational expert is asked a hypothetical question incorporating all of a plaintiff's RFC limitations.  *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994) (finding ALJ must rely on vocational expert when nonexertional limitations are present); *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986) *holding modified on other grounds by Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000) (finding step four decision not based on substantial evidence where ALJ failed to call vocational expert); *Branson v. Astrue*, 678 F. Supp. 2d 947, 960-61 (E.D. Mo. 2010) (stating ALJ's step four determination was supported by substantial evidence where ALJ asked vocational expert a hypothetical incorporating all physical, mental, and other RFC limitations).  By that same token, an ALJ must give the vocational expert's testimony great weight and may not disregard such testimony without explanation.  *Power v. Heckler*, 614 F. Supp. 336, 338 (D. Me. 1985) (stating ALJ must give vocational expert's testimony great weight); *Jenkins v. Colvin*, No. 1:14-CV-285-DBH, 2015 WL 5093290, at *2 (D. Me. Aug. 28, 2015); *Odierno v. Bowen*, 655 F. Supp. 173, 183-84 (S.D.N.Y. 1987) (stating "[i]n the absence of substantial contradictory evidence, the opinion of a vocational expert called by the Secretary given in response to a hypothetical question that accurately summarizes a claimant's limitations binds the Secretary"); *but see*

*Vaughan v. Shalala*, 58 F.3d 129, 132(5th Cir. 1995) (finding no reversible error where ALJ expressly relied on vocational expert's testimony).

Here, Ms. Young testified at Hearing I, and Ms. Ward confirmed at Hearing II, that Plaintiff has only one relevant past job: DOT 359.677-018 nursery school attendant/day care worker (SVP of 4; light work, but as performed by Plaintiff medium work, semi-skilled). *Id*. at 41-46, 57-59. Ms. Ward, at Hearing II, was asked a hypothetical question incorporating the RFC ultimately adopted by the ALJ; specifically, she was asked to assume the hypothetical person was:[9]

> [T]he same age, education, and vocational history as this claimant who is limited to light work as described by the commissioner, can occasionally lift and carry 20 pounds. Frequently carry 10 pounds, stand or walk at least six hours in an eight hour workday and secondly [sic] six hours in an eight hour workday with normal breaks. Let's say this individual needed to avoid work above shoulder level, could not constantly use the hands for such repetitive tasks as keyboarding, could use hands frequently but not constantly and then needed access to a restroom at the job site.

[TR at 58]. The ALJ then asked if the hypothetical person could perform her past work as a day care worker; Ms. Ward testified, "**[n]o.** I think the no work above the shoulder level, the daycare worker I think would be required to do that." *Id*. at 57-59. The ALJ went on to find that Plaintiff, contrary to the testimony of Ms. Ward (and his own RFC finding precluding Plaintiff from above the shoulder work) could perform her past work as a day care worker as it is generally performed. *Id*. at 16-18. The ALJ provided no explanation for disregarding the testimony of the vocational expert or to support his conclusion that such work did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id*. The ALJ's finding that Plaintiff could perform her past work as a day care worker at step four is error. *Fields*, 805 F.2d at 1171 (explaining ALJ's findings were error where nonexertional limitations

---

[9] The hypothetical posed to Ms. Young at Hearing I did not include a restriction on above the shoulder work; and further, the ALJ's determination II does not reference or rely on Ms. Young [TR at 14-18,41-46].

existed and findings were unsupported by a vocational expert's testimony); *Odierno*, 655 F. Supp. at 183-84 (finding ALJ is bound by opinion of vocational expert in the absence of contrary evidence).

## II.     *ALJ's failure to Give Treating Physician Proper Weight*

Plaintiff further argues that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Lieman, related to Plaintiff's urinary incontinence symptoms [Dkt. 10 at 6-10]. Specifically, Plaintiff asserts that the ALJ erred when he made the following finding:

> Dr. Lieman wrote the claimant was post ureteral reimplantation for an uretero-vaginal fistula on January 23, 2012. He opined she could have chronic bladder spasms and frequent urination. In subsequent progress notes, Dr. Lieman assessed Ms. Stancle with stress incontinence (Exhibit 15F). However, those notes are dated after the claimant's date last insured, June 30, 2012. Dr. Lieman made no statement or estimate of when Ms. Stancle's incontinence began, how frequently it occurred, or how much it hindered her activities of daily living and/or work functions. On January 23, 2012 Dr. Lieman essentially wrote only of what the claimant *could have*, i.e. chronic bladder spasms and frequent urination. Therefore, the January 23, 2012 [sic] statement has little weight.[10]

[TR at 16-17 (emphasis in original); Dkt. 10 at 6-10]. Plaintiff further asserts that the ALJ was required by the regulations to contact Dr. Lieman for further information, including a RFC assessment, regarding Plaintiff's impairment [Dkt. 10 at 6-10]. Commissioner argues that the ALJ's RFC properly compensated for Dr. Lieman's assessment by (1) finding Plaintiff's urinary incontinence to be a severe impairment at step two; and (2) including a RFC limitation that Plaintiff have access to a bathroom at her job site [Dkt. 12 at 6-11]. Commissioner further argues that Dr. Lieman's opinion was conclusory, and did not specify when the urinary incontinence began, how frequently it occurred, severity of symptoms, or job-based limitations resulting from the impairment; that the ALJ considered the relevant 20 C.F.R. § 404.1527(c)(2)

---

[10] The Court notes that the ALJ incorrectly referenced the date of Dr. Lieman's Letter as January 23, 2012, when the statement was in fact dated June 4, 2012 [TR at 589]. However, it is clear from the ALJ's opinion, including the internal citations to Exhibit 12F, that the ALJ was referring to Dr. Lieman's Letter dated June 4, 2012, and the Parties do not dispute that same [Dkts. 10; 12; 13].

factors and gave the opinion little weight; that Dr. Lieman's opinion did not opine on an issue reserved to the Commissioner; and that the ALJ's error was harmless [Dkt. 12 at 6-11].

### 1. *Requirements for Giving Weight to Treating Physician*

The treating physician rule provides that the opinion of a claimant's treating physician (such as Dr. Lieman here) is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995). A treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).[11] "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994) *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103 (2000).

### 2. *Factors to be Considered Before Declining to Give Treating Physicians' Opinions Controlling Weight*

SSA Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(c)(2). As stated in *Newton*:

---

[11] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and the court's reference to subsection (d)(2) refers to the factors now present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (August 24, 2012).

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton*, 209 F.3d at 455-56 (internal citations and quotation marks omitted); s*ee, e.g., Greenspan,* 38 F.3d at 237; *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations…"); *Nguyen v. Colvin*, No. 4:13-CV-2957, 2015 WL 222328, at *9 (S.D. Tex. Jan. 14, 2015) (finding a treating physician's unsupported, check-the-box questionnaire regarding disability typifies the "brief and conclusory" statements that an ALJ may disregard under the good cause exceptions to the treating physicians rule); *see also* 20 C.F.R. § 404.1527(c)(3) (providing that the ALJ can change the weight given to a medical opinion based on whether the opinion is well supported or conclusory). Notably, silence by a treating physician on a key issue is not good cause to reject the treating physician's opinion. *Newton*, 209 F.3d at 453-58 (finding no good cause where ALJ rejected treating physician's opinion in part because the physician omitted or did not opine on particular issues).

If good cause is not present to reject or give little weight to the opinion of a treating physician, the SSA regulations specifically require consideration of each and every of the following factors set forth in 20 C.F.R. § 404.1527(c)(2) (hereinafter "the relevant factors"): (1) length of treatment relationship; (2) frequency of examination; (3) nature and extent of treatment relationship; (4) supportability of the medical opinion; (5) consistency;

(6) specialization of the physician; and (7) other factors.  *See* 20 C.F.R. § 404.1527(c)(2) (listing

factors to consider); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of

each of the 20 C.F.R. § 404.1527(c)(2) factors); *Burgess v. Astrue*, No. CA C-10-371,

2011 WL 1828377, at *17 (S.D. Tex. Apr. 21, 2011), *report and recommendation adopted,*

No. CIV.A. C-10-371, 2011 WL 1827241 (S.D. Tex. May 11, 2011) (finding ALJ must consider

"each and every one" of the six factors in 20 C.F.R. § 404.1527).  The Court must also consider

if the error is a harmless error.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

### 3. *Weight Given to Dr. Lieman*

At step four, the ALJ stated the following in reference to Dr. Lieman:

The Appeals Council Order specified that particular attention be paid to the
opinion of Stephen Lieman, M.D. at Exhibit 12F.  In that exhibit, Dr. Lieman
wrote the claimant was post ureteral reimplantation from an uretero-vaginal
fistula on January 23, 2012 [sic].  He opined she could have chronic bladder
spasms and frequent urination.  In subsequent progress notes, Dr. Lieman
assessed Ms. Stancle with stress incontinence (Exhibit 15F).  However, those
notes are dated after the claimant's date last insured, June 30, 2012.  Dr. Lieman
made no statement or estimate of when Ms. Stancle's incontinence began, how
frequently it occurred, or how much it hindered her activities of daily living
and/or work functions.  On January 23, 2012 [sic], Dr. Lieman essentially wrote
only of what the claimant *could have* i.e. chronic bladder spasms and frequent
urination.  Therefore, the January 23, 2012 [sic] statement has little weight.

In progress notes by James Baker, M.D. dated March 22, 2013 to March 31, 2013,
the only reference to genitourinary matters was to a "urinary outlet obstruction"
(Exhibit 14F, page 2).  On March 15, 2013, Ms. Stancle is not recorded to make
any specific complaint about incontinence.  Instead, she states she was doing well,
but that her left leg gives out (Ibid.)  On March 31, 2013, Dr. Baker indicates
Ms. Stancle was positive for kidney/bank pain, but negative for dysuria [sic]
(Exhibit 14F, page 5).

In her testimony on December 9, 2013, Ms. Stancle confirmed having stress
incontinence when she lifts clothes baskets.  She did not indicate incontinence to
be a problem that occupied a great deal of her time, or that interfered significantly
with the course of her activities of daily living.

After careful consideration of the evidence, the undersigned finds that the
claimant's medically determinable impairments could reasonably be expected to

cause the alleged symptoms. However, the records do not substantiate that her stress incontinence or bladder spasms, prior to or after her date last insured, were preventing her from performing activities of daily living or impeding basic work functions to any significant extent.

In sum, the above residual functional capacity assessment is supported by the state agency's Physical Residual Functional Assessment (Exhibit 9F) [Dr. Bailey]. Although it was created ten months prior to the date last insured, the assessment was not contradicted in its findings by any subsequent medical document or opinion.

[TR at 16-18]. Again to reiterate, Plaintiff protests the lack of weight accorded Dr. Lieman's opinions, arguing that the ALJ failed to articulate specific reasons for rejecting her treating physician Dr. Lieman's opinions; and that the record is insufficiently developed with respect to Plaintiff's urinary incontinence and limitations imposed therefrom to ascertain an appropriate weight or lackthereof [Dkt. 10; TR at 505-89; 589-625].

### a. *No Good Cause to Discount Weight*

The Court first determines if there was good cause to give Dr. Lieman's opinion little weight. The ALJ articulated that Dr. Lieman's records merely indicated "what the claimant could have" and also asserted that Dr. Baker's assessment does not support urinary incontinence [TR at 17]. The ALJ reasons that Dr. Lieman's opinion is thus unsubstantiated and/or contradicted by other medical evidence [TR at 14-18]. However, following review, there is no evidence that Dr. Lieman's records are conclusory. *See Foster*, 410 F. App'x at 833 (finding good cause where treating physician's records were conclusory); *Nguyen*, 2015 WL 222328, at *9 (finding good cause to reject treating physician statement that was a check the box questionnaire and conclusory). Moreover, review of the record, reflects that Dr. Lieman's opinions were uncontroverted by another treating or examining physician [*See* TR at 314-625]; *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012) (unpublished) (finding ALJ had good cause to reject physician's opinion where other physician opinions contradicted it). Indeed, Dr.

Baker, the treating physician referenced by the ALJ to refute Dr. Lieman's testimony, treated Plaintiff for other physical conditions and medication management, not urinary incontinence. *Id.* at 598-603. As noted by the Fifth Circuit, a specialist's opinion, such as Dr. Lieman's in urology, should be accorded more weight than a non-specialist opinion, such as Dr. Baker's. *Paul*, 29 F.3d at 211 (stating a specialist opinion is entitled to more weight than a non-specialist opinion). Also, Dr. Baker's records, reflecting a discussion of a micro urinary outlet obstruction, are in fact consistent with (and do not contradict evidence of) the Plaintiff having urinary symptoms. *Id.*

Further, the ALJ's assertion in Determination II that Dr. Lieman's treatment records are inconsistent with severe urinary incontinence symptoms misstates the contents of Dr. Lieman's records [TR at 14-18]. Dr. Lieman's treatment records both before and after June 30, 2012 provide evidence of continuing follow up care for Plaintiff's urinary incontinence symptoms, and therefore support Dr. Lieman's opinion that Plaintiff has urinary incontinence. *Id.* at 571-89, 605-13. Dr. Lieman's records are, however, silent concerning a urinary incontinence onset date, Plaintiff's RFC, or the persistence, intensity, and limiting effects of Plaintiff's symptoms. *Id.* at 14-18, 571-89, 605-13. As explained in *Newton*, a treating physician's silence on an issue, without more though, does not provide good cause to reject the treating physician's opinions or give them little weight; and such silence may impose on an ALJ the duty to re-contact the treating physician to clarify and expand his or her conclusions regarding Plaintiff's work and/or activities of daily living limitations. *Newton*, 209 F.3d at 453-58 (finding that ALJ should have re-contacted treating physician, where the ALJ initially gave the treating physician's opinion little weight because it did not opine on an issue); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (remanding for further development of the record where medical record did not opine on

how plaintiff's impairment effected his ability to work). Therefore, the ALJ has not shown good cause to reject or give little weight to Dr. Lieman's opinions, and the ALJ was required to analyze Dr. Lieman's opinions under each of the relevant factors previously outlined.

### b. Consideration of the 20 C.F.R. § 1527(c)(2) Factors

The sufficiency or lackthereof of an analysis under 20 C.F.R. § 1527(c)(2) is a fact based analysis. Generally, courts in the Fifth Circuit have found an ALJ's analysis under 20 C.F.R. § 404.1527(c)(2) to be sufficient where: (1) good cause was shown; (2) there was implicit (if not explicit) consideration of each of the relevant factors; and (3) failure to address the factors was harmless error. *Colegrove v. Colvin*, No. 4:14-CV-798-A, 2015 WL 9582909, at *9 (N.D. Tex. Dec. 14, 2015), *report and recommendation adopted*, No. 4:14-CV-798-A, 2015 WL 9581835 (N.D. Tex. Dec. 30, 2015) (finding ALJ weight all relevant factors and found treating physician's records were inconsistent with his treating records); *Chess v. Astrue*, No. CIV.A. H-10-0607, 2011 WL 11048249, at *5 (S.D. Tex. Feb. 2, 2011) (stating "ALJ carefully went through each of the factors in his assessment); *Bentley v. Colvin*, No. 13-CV-4238-P, 2015 WL 5836029, at *4-10 (N.D. Tex. Sept. 30, 2015) (affirming ALJ's determination as to treating physician's lack of weight where any failure to consider the relevant factors was harmless error); *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012) (unpublished) (finding ALJ had good cause to reject physician's opinion and failure to consider 20 C.F.R. § 404.1527 factors was harmless error where other physician opinions contradicted physician's opinion and the medical record contained all evidence necessary to make findings on all factors). Conversely, courts have found the relevant factor analysis insufficient where: (1) no good cause was present; (2) the ALJ failed to analyze several of the relevant factors; and/or (3) the error was not harmless.

*Smith*, 2016 WL 762693, at *9-15 (finding weight analysis insufficient where ALJ only implicitly examined a couple of the relevant factors and ALJ's good cause assertions were unsubstantiated by the record); *Patino v. Colvin*, No. 3:15-CV-618-BF, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016) (finding ALJ considered some relevant factors, but omission of three factors was error); *Rodriguez v. Colvin*, No. 2:14-CV-00093, 2015 WL 5637545, at *8 (N.D. Tex. Sept. 3, 2015), *report and recommendation adopted sub nom. Rodriquez v. Colvin*, No. 2:14-CV-00093, 2015 WL 5666202 (N.D. Tex. Sept. 21, 2015) (finding case must be remanded where ALJ did not consider factors four through six). Notably, the Commissioner cannot offer post hoc rationalizations to justify the weight given to a treating physician's opinion, as the determination under 20 C.F.R. § 404.1527(c)(2) must "stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455; *Smith*, 2016 WL 762693, at *9.

The ALJ in Determination II properly referenced 20 C.F.R. § 404.1527 and engaged in a comparison of Dr. Baker (a contemporaneous treating physician) and Dr. Lieman's opinions and included references regarding the frequency of examination. *Id.* While the government rationalizes the ALJ must then have also considered the other factors, the ALJ's analysis is threadbare regarding the remaining 20 C.F.R. § 404.1527(c)(2) factors, and does not expressly address the (1) length of treatment relationship; (3) nature and extent of treatment relationship; (4) supportability of the medical opinion; or (6) specialization of the physician. *Id* at 14-18; 20 C.F.R. § 404.1527(c)(2). *Newton*, 209 F.3d at 453-58. As in recent cases *Smith* and *Patino*, an analysis of some of the factors, but omission of others, does not comply with *Newton*'s requirement "that an ALJ is required to consider *each* of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton*, 209

F.3d at 456 (emphasis added); *Smith* 2016 WL 762693, at *9-15 (remanding where ALJ did not consider all factors); *Patino*, 2016 WL 1664912, at *6-8 (remanding where ALJ omitted three factors); *Rodriguez v. Colvin*, No. 2:14-CV-00093, 2015 WL 5637545, at *8 (N.D. Tex. Sept. 3, 2015), *report and recommendation adopted sub nom. Rodriquez*, 2015 WL 5666202 (remanding where ALJ omitted factors four through six).

The Government argues that such an analysis is unnecessary because the ALJ's opinion demonstrates he effectively considered each factor [Dkt. 12 at 10]. The cases cited by the Commissioner on this point are unpersuasive [Dkt. 12 at 9-10]. *Rollins*, an unpublished Fifth Circuit case, is readily distinguishable because the court therein found that good cause (conflicting medical opinions from other physicians) existed to give less weight to the treating physician's opinion. *Rollins v. Astrue*, 464 F. App'x 353, 357-58 (5th Cir. 2012). The decision rests on the presence of conflicting physician opinions in the record (and therefore the good cause exception), not on the sufficiency or insufficiency of the ALJ's factor analysis. *Id.*[12] Similarly, *Christman* considered circumstances where examining physicians, not treating physicians, were given less than controlling weight, and again, relied on the good cause exception (conclusory statements and conflicting medical opinions), not on analysis of the 20 C.F.R. § 404.1527(c)(2) factors. *Christman v. Comm'r of Soc. Sec. Admin.*, No. 4:12-CV-00445-DDB, 2014 WL 1018063, at *3-4 (E.D. Tex. Mar. 13, 2014).

The Court finds compliance with *Newton* is required, and the Commissioner's attempts at post hoc rationalization of the ALJ's findings, suggesting Dr. Lieman's opinions were conclusory, and arguing Dr. Lieman had only treated Plaintiff for a few months before rendering his opinion and that his treating history is inconsistent with onset prior to Plaintiff's date last

---

[12] The court noted, in dicta, that the relevant factors were not present in the ALJ's opinion, but could be ascertained from the record. *Id.*

insured, fails as a matter of law [Dkt. 12 at 8-10].  The ALJ did not provide these arguments as reasons for his findings, and adequacy of the 20 C.F.R. § 404.1527(c)(2) determination must rise and fall based on the ALJ's decision and reasoning in Determination II.  *Newton*, 209 F.3d at 455 (stating ALJ's decision must rely on reasoning set forth in the ALJ's decision); *Smith*, 2016 WL 762693, at *9 (finding court cannot rely on post hoc rationalizations of the determination, the ALJ must provide his or her reasoning).  On the facts before the Court, the ALJ's analysis of the 20 C.F.R. § 404.1527(c)(2) factors was insufficient, and the Court must remand the case for consideration of *each* 20 C.F.R. § 404.1527(c)(2).  *See Newton*, 209 F.3d at 453-58 (stating Fifth Circuit requires the ALJ to consider each factor of 20 C.F.R. § 404.1527(c)(2), not just some factors).

### c.    *Duty to Develop the Record*

The Fifth Circuit "imposes a duty on the ALJ 'to develop the facts fully and fairly related to an applicant's claim for disability benefits' and to fill clear gaps in the administrative record where the clinical findings were inadequate.  *Newton*, 209 F.3d at 456-58 (*quoting Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). "Adjudicators are generally required to request that acceptable medical sources provide [medical source statements] with their medical reports." SSR 96-5P"; *Newton*, 209 F.3d. at 456-58 (noting ALJ's duty to develop the record and remanding based on an incomplete record regarding plaintiff's disability); *Graham v. Colvin*, No. 13-CV-728S, 2014 WL 3572422, at *4 (W.D.N.Y. July 21, 2014) (stating "the Commissioner has an affirmative duty to request medical source statements from plaintiff's physicians despite what is otherwise a complete medical history"); *Robins v. Astrue*, No. CV-10-3281 FB, 2011 WL 2446371, at *4 (E.D.N.Y. June 15, 2011) (remanding case where ALJ did not ask

treating physicians to opine on Plaintiff's RFC); *Johnson v. Astrue,* 811 F. Supp. 2d 618, 629 (E.D.N.Y. 2011) (stating remand required where ALJ did not request any treating sources provide a RFC assessment).

In *Newton*, the Fifth Circuit considered an ALJ opinion in which the ALJ rejected the opinions of the claimant's treating physician with respect to claimant's limitations stemming from lupus. 209 F.3d. at 453-56. The court explained that the medical record contained treatment records, an assessment (medical source statement), and interrogatories from claimant's treating physician, and the testimony of a medical consultant who reviewed claimant's records and testified at hearing. *Id.* at 453-58. It further explained that the ALJ relied on the treating physician's omission of work restrictions from the contemporaneous treating records, and a non-treating/examining physician's testimony that claimant had few limitations, to justify giving the treating physician's opinion little weight. *Id.* The court held that:

> absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). Additionally, if the ALJ determines the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Id.* at 453. The Fifth Circuit concluded that the ALJ did not perform a detailed weight analysis of each 20 C.F.R. § 404.1527 factor and, given an incomplete record with respect to the frequency, degree, and manner in which claimant's impairment complications interfered with her activities, the ALJ was required to re-contact the treating physician to seek clarification and/or additional evidence. *Id.* at 458. Citing SSR 96-2P, SSR 96-5P, and 20 C.F.R. § 404.1512(e), the court remanded the case for further development of the record. *Id.*; *see also Ripley v. Chater,*

67 F.3d 552, 557-58 (5th Cir. 1995) (remanding and instructing the ALJ to obtain a treating physician report regarding the effects of plaintiffs impairment on his ability to work); *Smith v. Colvin*, No. 1:14CV195-SA-DAS, 2016 WL 762693, at *17 (N.D. Miss. Feb. 25, 2016) (remanding for further development of the record concerning plaintiff's RFC and analysis of treating physician opinion weight); *Brock v. Astrue*, No. 3:09CV48-MPM-DAS, 2009 WL 3762978, at *1 (N.D. Miss. Nov. 10, 2009) (remanding for further development of the record through hearing and consideration of several consultative medical reports).

Here, as in *Newton*, the ALJ relied on the omission of statements regarding work and daily living restrictions in Dr. Lieman's treating records to justify his conclusion that Plaintiff's urinary incontinence caused few limitations [TR at 16-17]. *Newton*, 209 F.3d. at 453-58 (finding ALJ relied on omission of information regarding work and daily living restrictions). However, unlike *Newton*, no medical source statements, or similar RFC opinions from examining or treating physicians regarding Plaintiff's urinary incontinence limitations are present in the record, and there is no evidence that the ALJ requested assessment(s) from Plaintiff's treating or examining physicians. *Id*. Notably, the only express RFC opinion was from Dr. Bailey, a medical consultant for the SSA, dated August 16, 2011, approximately four months prior to the potential onset of Plaintiff's urinary incontinence symptoms. *Id*. at 497-504. Dr. Bailey noted at the time of his assessment that no medical source statements were present in the record regarding any of Plaintiff's impairments. *Id*. Yet, with a medical record more limited than that in *Newton*, the ALJ proceeded to find that Plaintiff's urinary incontinence impairment caused little work related restriction. *Id*. at 16-18; *Newton*, 209 F.3d. at 453-58 (noting record contained treating records, an assessment, and interrogatory responses); *Ripley*, 67 F.3d at 557-58 (finding that the ALJ failed to obtain information from plaintiff's

treating physician about the effects of plaintiff's impairment on his ability to work and remanding for development of the record). The court in *Newton*, confronting such a record, and noting that the ALJ failed to consider the 20 C.F.R. § 404.1527(c)(2) factors, remanded the case for consideration of the factors and for further fact finding, including seeking clarification or supplementation from the plaintiff's treating physician. *Newton*, 209 F.3d at 453-58.

The Court recognizes, as other courts in this circuit have, that *Newton*'s holding concerning the requirement to re-contact the treating physician has been partially abrogated by statute. 20 C.F.R. § 404.1512(e) has been replaced by 20 C.F.R. § 404.1520b reflecting a discretionary standard (rather than mandatory) concerning contacting a treating physician for additional information. *Bentley v. Colvin*, No. 13-CV-4238-P, 2015 WL 5836029, at *5 (N.D. Tex. Sept. 30, 2015) (recognizing 20 C.F.R. § 404.1512(e) has been superseded by statute). However, this Court finds that, notwithstanding the changes to 20 C.F.R. §§ 404.1512(e), 404.1520b, SSR 96-5P, cited herein, provides justification for requiring supplementation from Dr. Lieman of, among other things, Dr. Lieman's opinion on Plaintiff's RFC [TR at 14-18]. *Newton*, 209 F.3d at 453-58; 20 C.F.R. § 404.1527(c)(2).

Notably, the earlier Appeals Council's Order dated August 13, 2013 expressly directed the ALJ to: "Give further consideration to the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. **As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairments** (20 CFR 404.1512)." [TR at 84-85] (emphasis added). The ALJ did not contact Dr. Lieman to seek additional information, although he acknowledged that Dr. Lieman's opinion

(and therefore the record) was incomplete as to "when [Plaintiff's] incontinence began, how frequently it occurred, or how much it hindered her activities of daily living and/or work functions." *See Newton*, 209 F.3d. at 456-58 (stating ALJ acknowledged the record was incomplete and finding ALJ should have re-contacted physician for clarification); *accord Graham*, 2014 WL 3572422, at *4 (W.D.N.Y. July 21, 2014) (finding ALJ must request medical source statements to complete medical record); *Robins*, 2011 WL 2446371, at *4; *Johnson,* 811 F. Supp. 2d at 629

Like in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. Nor is this a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion… Instead, this is a case where the ALJ summarily rejected the opinions of [Plaintiff's] treating physician [Dr. Lieman], based only on the testimony of a non-specialty medical expert.... At best, the record was incomplete, and [Dr. Lieman] could have provided clarification or supplementation, if requested." *Newton*, 209 F.3d at 458 (5th Cir. 2000). The Court finds, on the specific facts before it, that the ALJ's failure to request a statement, or at least clarification from Dr. Lieman regarding the limiting effects (or lackthereof) of Plaintiff's urinary incontinence symptoms, was error and requires the Court to remand the case for further development of the record related to Plaintiff's RFC limitations caused by urinary incontinence. *Newton*, 209 F.3d. at 453-58 (remanding where ALJ failed to develop the record concerning plaintiffs RFC); *Ripley*, 67 F.3d at 557-58 (remanding case for development of the record where ALJ failed to request RFC information from a treating physician).

*III.*     *Harmless Error*

The Fifth Circuit has held that procedural perfection in administrative proceedings is not required and any variation amounts to harmless error that is not grounds for reversal, unless the substantial rights of a party have been affected. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "A claimant establishes the requisite prejudice by showing that, 'if the ALJ had fully developed the record,' additional evidence would have been produced that 'might have led to a different decision.'" *Id.* (quoting *Newton*, 209 F.3d at 458).

The ALJ's error in finding Plaintiff could perform her past work is prejudicial, as is the ALJ's failure to conduct the weight analysis under 20 C.F.R. § 404.1527(c)(2). *Newton*, 209 F.3d. at 453-58 (finding failure to consider 20 C.F.R. § 404.1527 factors and rejection of treating physician's opinion was prejudicial error); *Patino*, 2016 WL 1664912, at *5 (finding error was not harmless where it was "conceivable, if not probable" that the ALJ would have reached a different conclusion had he considered all 20 C.F.R. § 404.1527(c)(2) factors). Further, additional clarifying information may alter the ALJ's conclusions regarding the weight to be given to Dr. Lieman's opinion, particularly where, as here, the ALJ's primary reason for rejecting Dr. Lieman's opinion was that it did not opine on RFC. *Id.* Thus, because the ALJ's errors at step four might have resulted in different decision(s), the errors are prejudicial and remand is warranted.[13]

---

[13] Because the Court remands the case at step four, the Court does not reach Plaintiff's third argument, whether the ALJ appropriately considered the vocational expert's testimony related to her urinary incontinence at step five of the

# CONCLUSION

The Court concludes that the ALJ erred at step four of the sequential evaluation in applying Plaintiff's RFC to find that Plaintiff could perform her past work as a day care worker. The Court also concludes that the ALJ failed to give Plaintiff's treating physician proper weight by failing to analyze the weight of Dr. Lieman's testimony pursuant to 20 C.F.R. § 404.1527(c)(2), and inadequately developed the record pursuant to SSR 96-2P, SSR 96-5P, and *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The Court concludes that these errors were prejudicial to Plaintiff.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner denying Plaintiff's claims is **REMANDED** under the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings.

**IT IS FURTHER ORDERED** that at step four of the sequential evaluation, the ALJ shall conduct further review of the administrative record and fully develop the factual findings regarding the weight to be given to the opinions of Plaintiff's treating physicians, including Dr. Lieman, and Plaintiff's resulting RFC. The Court directs the ALJ to request opinions from Plaintiff's treating physicians regarding any functional limitations imposed by Plaintiff's urinary incontinence. The Court also directs the ALJ to set forth in detail his findings with respect to each factor in 20 C.F.R. § 404.1527(c)(2), in the event that he gives Dr. Lieman (or another of Plaintiff's treating physicians) less than controlling weight. Commissioner shall conduct a new hearing within sixty (60) days of the date of this order, if

---

sequential evaluation [Dkt. 10]. However, the Court notes that Ms. Ward's testimony at Hearing II was equivocal and unclear with respect to Plaintiff's ability to perform any employment in the national economy with a frequent unscheduled breaks limitation [TR at 56-61]. *See e.g. Cantrell v. Bowen*, 804 F.2d. 1571 (11th Cir. 1986) (finding that vocational expert testimony that is equivocal is not substantial evidence to support an ALJ's finding at step five). The Court encourages the ALJ to fully develop any vocational expert testimony regarding Plaintiff's ability to perform other jobs in the national economy with specific residual functional limitations, upon remand.

necessary to develop the record and vocational expert testimony concerning Plaintiff's ability to perform other jobs in the national economy based on the RFC finding made by the ALJ upon remand.

Pursuant to the foregoing, the decision of the Commissioner is **REMANDED**.


**Jun 7, 2016**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE